## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THOMAS BRENNAN, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) Civil Action No. 11-1448(EGS) |
| v. | ) |
|  | ) |
| HILDA L. SOLIS, | ) |
| Secretary of Labor, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

### MEMORANDUM OPINION

Plaintiffs Thomas Brennan and Charles Rightnowar filed this action against the Secretary of Labor under Section 481 of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 1981.  In their Complaint, plaintiffs request an Order requiring the Secretary to file suit to set aside the December 15, 2010 officer election in the National Division of the Brotherhood of Locomotive Engineers and Trainmen (BLET) or, in the alternative, for a supplemental Statement of Reasons as to why the Secretary failed to file suit.  Upon consideration of the motions, the responses and replies thereto, the applicable law, the administrative record, and for the reasons set forth herein, defendant's motion is **GRANTED** and plaintiffs' cross-motion is **DENIED** as moot.

## I.   BACKGROUND

### a. Factual Background

Plaintiffs were unsuccessful candidates for union officer positions in the December 15, 2010 BLET election.  Compl. ¶¶ 7-9.  Brennan was a candidate for the office of President in BLET's National Division.  *Id*. ¶ 2.  Plaintiff Rightnowar was a candidate for the office of Secretary Treasurer of BLET's National Division.  *Id*. ¶ 3.  Incumbent President Dennis R. Pierce and incumbent Secretary Treasurer William C. Walpert were among the other opposing candidates in the election, and were re-elected.  *Id*. ¶¶ 9-11.  Incumbent officers Pierce and Walpert were part of what was called the "Unity Slate."  *Id*. ¶¶ 12-13. In addition to Pierce and Walpert, the Unity Slate included several additional candidates, two of whom were running opposed and several who were running unopposed.  *Id*. ¶ 13.

The December 15, 2010 election was the first "rank and file" election for the National Division; previously, positions had been filled through a delegate convention.  *Id*. ¶ 16. Plaintiffs allege that prior to the election, the incumbent officers[1] set up a "Get Out the Vote" drive ("GOTV Drive").  *Id*. ¶ 19.  Plaintiffs allege that the GOTV drive was "allegedly

---

[1] Plaintiffs' allegation on this point makes an unclear reference to "they."  *See* Compl. ¶ 19.  It is unclear whether "they" refers to the incumbent officers, the Unity Slate, or some combination of the two.

neutral" but "consisted of persons opposed to the use of the rank and file election and in favor of the delegate convention." *Id.* ¶ 19. Plaintiffs further allege that after the efforts to change back to a delegate convention were rejected, the GOTV Drive was continued for the upcoming election. *Id.* ¶ 20.

Plaintiffs allege that although the "official position" of the incumbent officer candidates was that the BLET National Division was sponsoring a neutral effort to increase voter turnout, plaintiffs state that there were several improprieties in connection with the administration of the GOTV Drive. Plaintiffs allege that "[t]wo union officers headed the GOTV Drive and worked on a full time basis throughout the campaign period leading up to the December 15, 2010 period and were possibly paid by two railroad companies." Compl. ¶ 21. Plaintiffs further allege that the "Unity Slate web site stated that the GOTV [Drive] was an activity of the Unity Slate campaign." *Id.* ¶ 23. Specifically, the website, a copy of which is attached to the Complaint as an exhibit, told members that "if they wished to support the Unity Slate, they should become active in the 'BLET Unity's Slate Get Out the Vote Drive." *Id.* ¶ 25. Plaintiffs further allege that BLET officers "were permitted on union time to make phone calls and contact various members—allegedly just to urge them to vote." *Id.* ¶ 26. Plaintiffs aver that "no one knows to whom such calls were made,

and there is no documentation as to all members who may have received such calls." *Id.* ¶ 27.

### b. Plaintiffs' Pre-Election Protests

Prior to the election, plaintiff Rightnowar filed several pre-election protests on behalf of himself and Thomas Brennan.[2] In protest number ND-2010-17, filed November 8, 2010, Rightnowar raised several issues with the then-upcoming election.  R. 56. Rightnowar asserted

> (1) alleged violations of portions of the [LMRDA], the
> IBT Constitution, BLET By-laws and the BLET Election
> Rules; (2) the use of Union resources 'to "construct"
> a nation-wide canvassing to get out the vote from the
> persons most likely to vote for the incumbent National
> Division officers'; (3) request for [National
> Secretary-Treasurer] Walpert's replacement as
> 'Election Officer' with such appointment to be
> made/approved by 'the IRB and President Hoffa'; (4) a
> 'complete accounting' of the alleged misuse of Union
> resources and; (5) 'A ballot form that is fair and
> neutral and not skewed to favor the Unity Slate.

R. 56.  The Election Protest Committee determined that Rightnowar did not meet his burden "to provide a preponderance of reliable evidence that any members of the National Division Advisory Board or any members of the Unity Slate are in

---

[2] Intervenor BLET suggests in a footnote that only the claims of plaintiff Rightnowar are properly before the Court because Brennan did not personally file any pre-election protests and did not sign Rightnowar's protests.  BLET Opp. to Pls.' Mot. for Summ. J. at 3 n.2.  In reply, the Secretary states that it does not seek dismissal of Brennan as a plaintiff "because Rightnowar is properly before the Court and dismissal of Brennan would not alter the claims necessary for the court to decide."  Def.'s Reply at 2 n.1.

violation of the Election Rules in any respect." R. 64. A second pre-election protest, ND-2010-18, filed by letters dated November 15 and 16, 2010, alleged substantially similar violations. R. 65. The Election Protest Committee determined that the second protest was not timely filed and declined to consider it. R. 67-68. The Committee noted that it had considered the identical issues in ND-2010-17. R. 68.

On December 8, 2010, Rightnowar filed an appeal of the Election Protest Committee's decision in ND-2010-17. R. 78. Rightnowar asserted that union funds had been improperly used in connection with the activities of the Mobilization Network and the GOTV Drive. R. 79. Rightnowar also alleged that Unity Slate supporters were traveling on union time to engage in election activities. R. 79. Rightnowar also challenged the Election Protest Committee's determination that George Faulkner, rather than Walpert, was serving as Election Officer. R. 79. Finally, Rightnowar alleged that the current ballot was in violation of BLET By-laws. R. 79. On December 15, 2010, the BLET Advisory Board issued a Decision on Appeal on Rightnowar's pre-election protests ND-2010-17 and ND-2010-18. R. 82. The Advisory Board concluded that the Election Protest Committee's decision was neither arbitrary nor capricious under the applicable rules and affirmed the decision. R. 85-86.

After the election, on January 12, 2011, plaintiffs filed a complaint with the Secretary asking that the election results be set aside.  R. 409. ("Agency Complaint").  The Agency Complaint, which stated that it was based on pre-election protests ND-2010-17 and ND-2010-18, alleged several violations of the LMRDA.  R. 51.  Plaintiffs alleged that "National Division officers running for election used union funds to 'get out the vote' in the officer election."  R. 51.  Plaintiffs also alleged that union funds were used to create a so-called Mobilization Network during the election period, which had a bias toward the Unity Slate.  R. 52.  Plaintiffs also alleged that railroad carrier funds were also used in setting up the Mobilization Network.  R. 52.  Plaintiffs further alleged that the incumbent candidates increased their official travel during the time they were running for office and were essentially campaigning on union funds, which was a misuse of union funds in violation of 29 U.S.C. § 481(g).  R. 53.  Plaintiffs also contended that a defunct publication, the Locomotive Engineers and Trainmen Journal was revived during the time period of the election solely for the purpose of supporting the incumbent officers.  R. 54.  Finally, plaintiffs argued that "the very form of the ballot was an 'advertisement' on behalf of the candidacy of the Unity Slate" because the ballot listed the names of the members of the Unity Slate, of whom all but four had already been

elected.  R. 54.  Plaintiffs contended that the only purpose of listing all of the names was making clear that the four candidates had the support of the BLET establishment and that, by comparison, plaintiffs "were marginal candidates unable to form a full slate."  R. 54.

On May 25, 2011, the Secretary issued a Statement of Reasons denying the relief requested in the Agency Complaint, finding that no violations of Title IV, as alleged by plaintiff, had occurred.  Statement of Reasons ("SOR"), Compl. Ex. B.  The Secretary explained that plaintiffs' allegations regarding the incumbent officers' improper use of union funds and resources for the GOTV Drive were not substantiated by the evidence.  SOR at 1.  Similarly, plaintiffs' allegations that the incumbent BLET National Division officers improperly campaigned while they were being compensated by the union also were not substantiated by the evidence.  *Id*.  The Secretary explained that the use of the Mobilization Network was in accordance with Section 7(h) of BLET's 2006 Bylaws, despite the fact that this was the first time the Mobilization Network had been used for officer elections.  *Id*.  The Secretary further explained that the investigation found that union members "received consistently clear communications that the Mobilization Network's purpose was to increase voter turnout and not to direct members to vote for specific candidates or slates."  SOR at 2.  The Secretary noted

that plaintiffs themselves "were asked to be part of [the] Get-Out-the-Vote-Drive for the election." *Id*. The Secretary further concluded that BLET National Secretary-Treasurer Walpert had not improperly served as an Election Officer while being a candidate in the election, and that Walpert's actions were permitted within the 2006 Bylaws.[3] The Secretary also concluded that there was no evidence of any discrimination in favor of or against any candidate, or that "anything improper or irregular occurred during the election." SOR at 2. Finally, the Secretary found that the candidates' names were listed in the election ballot in the "order specified in Article I of the election rules." *Id*. Thus, the Secretary concluded that there was no violation of the Act.[4]

### c. Proceedings Before This Court

On August 8, 2011, plaintiffs filed this action, alleging a violation of Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 557. Plaintiffs argue that the Secretary's Statement of Reasons was arbitrary and capricious. Compl. ¶ 38. Plaintiffs argue that the GOTV Drive violated the regulations

---

[3] This allegation is not mentioned specifically in the Agency Complaint but had been alleged earlier in the union protest process, and was addressed by the Secretary nonetheless.
[4] The Secretary rejected plaintiffs' remaining claims as not having been raised properly through the union's internal protest procedure. SOR at 2. The Secretary concluded that the remaining issues had not been properly exhausted and declined to reach those issues.

regarding the use of union funds in union-officer election campaigns.  Plaintiffs further challenge the Secretary's conclusion that there was no evidence to support plaintiffs' claims in view of a statement on the Unity Slate campaign website urging supporters to join the GOTV Drive.

In the Complaint, plaintiffs also make various allegations regarding what the Secretary allegedly did not properly determine in the Statement of Reasons.  Plaintiffs allege that the Secretary "has failed to explain why the use of union funds in a Get Out the Vote drive of this particular kind is a permitted use of union funds when it is not a permitted use in the Secretary's own regulations."  Compl. ¶ 43.  Plaintiffs further allege that "the Secretary fails to state whether the officer election was conducted with adequate safeguards."  *Id*. ¶ 47.  Plaintiffs further contend that the Statement of Reasons "fails to address whether safeguards were in place to *prevent* the misuse of union funds in a Get Out the Vote drive."  *Id*. ¶ 50.  In addition, plaintiffs argue, the "Statement of Reasons fails to even mention 401(c) or discuss the adequacy and transparency of safeguards that plaintiffs and members of the opposition to the Unity Slate could observe."  *Id*. ¶ 51.  Plaintiffs also argue that the Secretary impermissibly required plaintiffs to "prove" misuse of union funds, and thus the decision was both arbitrary and capricious and in violation of

Section 401(c) of the LMRDA.  *Id.* ¶  53.  Plaintiffs conclude that "[w]here a union has engaged in a new and novel use of union funds in an election campaign in a manner not covered by existing regulations, and where the union has put no adequate safeguards in place, and where the Secretary has not provided any discussion or meaningful discussion as to what such safeguards must be if such an unprecedented use of union treasury funds is upheld, the Secretary should either bring suit or provide an adequate Statement of Reasons why the Secretary has failed to do so."  *Id.* ¶ 55.

In their Complaint, plaintiffs request that the Court (1) declare the Statement of Reasons to be inadequate for failure to determine whether adequate safeguards were in place under the standard of Section 401(c) of the LMRDA; (2) declare that the Statement of Reasons is arbitrary and capricious and in conflict with the law, specifically Section 401 of the LMRDA; (3) direct the Secretary to either file suit to invalidate the December 15, 2010 election or provide a legally sufficient Statement of Reasons as to why the Secretary has failed to do so.

On November 1, 2011, the Secretary moved to dismiss or, in the alternative, for summary judgment.  ECF No. 9.  The Secretary argued that several of plaintiffs' claims were not raised before the Secretary and are outside of the scope of judicial review.  As to the issues that were properly raised,

10

the Secretary argues that her decision was supported by the evidence and was not arbitrary and capricious.  Plaintiffs filed a cross-motion for summary judgment, arguing that the Secretary's decision was arbitrary and capricious.  ECF No. 14. Plaintiffs argue that the Secretary failed to determine whether the union officer election was conducted lawfully, that the Secretary impermissibly disregarded evidence from a website, and that the Secretary departed from applicable regulations and enforcement policy.  On January 18, 2012, Intervenor BLET filed a memorandum in opposition to plaintiffs' cross-motion for summary judgment and in support of defendants' motion to dismiss or in the alternative for summary judgment.  ECF No. 18.  BLET argues that the Secretary's decision was neither arbitrary nor capricious and that plaintiffs' arguments are based on mere speculation and innuendo.  Also on January 18, 2012, the Secretary filed a reply in further support of her motion and in opposition to plaintiffs' motion.  ECF No. 19.  The Secretary argued again that plaintiffs' election protests that were before the Secretary did not allege that monitoring of campaign expenditures is required under the LMRDA, and that plaintiffs misconstrue the Secretary's authority.  The Secretary also argues that plaintiffs' arguments are based on a misrepresentation of the facts and speculation.  On November 19, 2012, plaintiffs filed a supplemental memorandum of law, to

which defendants responded, contending that a recent decision in
the case of *Corner v. Solis*, No. 11-8652, 2012 U.S. Dist. LEXIS
75742 (N.D. Ill. Jun. 1, 2012), required a finding in this case
that the Secretary's Statement of Reasons was arbitrary and
capricious.

The motions are ripe for the Court's decision.

## II.   LEGAL FRAMEWORK

### a. Motion to Dismiss or, in the Alternative, for Summary Judgment

The Secretary has moved for dismissal under Federal Rule of
Civil Procedure Rule 12(b)(6), and alternatively moves for
summary judgment under Rule 56.  Rule 12(d) provides that "[i]f,
on a motion under Rule 12(b)(6) . . . matters outside the
pleadings are presented to and not excluded by the court, the
motion must be treated as one for summary judgment under Rule
56."  Fed. R. Civ. P. 12(d).  If the motion is considered under
Rule 56, "[a]ll parties must be given a reasonable opportunity
to present all the material that is pertinent to the motion."
*Id*.  Here, because both parties have presented materials outside
the pleadings for the Court to consider in adjudicating their
motions, the Court deems it appropriate to treat both
submissions as motions for summary judgment.  *See Marshall Cnty.
Health Care. Auth. v. Shalala,* 988 F.2d 1221, 1226 & n. 5 (D.C.
Cir. 1993) (noting that a district court considering a Rule

12(b)(6) motion "can consult the [administrative] record to answer the legal question[s] before the court," but that "[i]t is probably the better practice for a district court always to convert to summary judgment"); *Mortgage Bankers Ass'n v. Solis*, 864 F. Supp. 2d 193, 201-02 (D.D.C. 2012) (in APA case, converting motion to dismiss, or in the alterative, for summary judgment into a motion for summary judgment).[5]

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Loma Linda Univ. Med. Ctr. v. Sebelius,* 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citing *Stuttering Found. of Am. v. Springer,* 498 F. Supp. 2d 203, 207 (D.D.C. 2007)).  However, due to the limited role of a court in reviewing the administrative record, the typical summary judgment standards set forth in Rule 56(c) are not applicable.  *Stuttering,* 498 F. Supp. 2d at 207 (citation omitted).  Rather, "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record

---

[5] For the reasons discussed herein, the Court finds it unnecessary to look beyond the Secretary's Statement of Reasons and the documents reflecting plaintiffs' prior union protests; nonetheless, the Court has converted this motion to one for summary judgment.

permitted the agency to make the decision it did.' " *Id.*
(quoting *Occidental Eng'g Co. v. INS,* 753 F.2d 766, 769-70 (9th
Cir. 1985)).

A reviewing court will "hold unlawful and set aside agency
action, findings, and conclusions found to be ... arbitrary,
capricious, an abuse of discretion, or otherwise not in
accordance with the law." *Ludlow v. Mabus,* 793 F. Supp. 2d 352,
354 (D.D.C.2011) (quoting 5 U.S.C. § 706(2)(A)).  In *Motor
Vehicle Manufacturers Ass'n of U.S. v. State Farm Mutual
Automobile Insurance Co.,* the Supreme Court explained the
"arbitrary and capricious" review by noting that "an agency rule
would be arbitrary and capricious if the agency has relied on
factors which Congress has not intended it to consider, entirely
failed to consider an important aspect of the problem, offered
an explanation for its decision that runs counter to the
evidence before the agency, or is so implausible that it could
not be ascribed to a difference in view or the product of agency
expertise."  463 U.S. 29, 43 (1983).  However, the standard of
review is a narrow one and "[t]he court is not empowered to
substitute its judgment for that of the agency." *San Luis
Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n,* 789
F.2d 26, 37 (D.C. Cir. 1986).  "[T]he party challenging an
agency's action as arbitrary and capricious bears the burden of
proof," *id.*, and the APA directs a reviewing court to "review

14

the whole record or those parts of it cited by a party" in making this assessment, 5 U.S.C. § 706.

### b. The LMRDA

Title IV of the LMRDA governs union elections.  Under 29 U.S.C. § 481, union members are guaranteed free and democratic elections.  *See Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470-71 (1968).  Under Section 401(a) of the LMRDA, "[e]very national or international labor organization, except a federation of national or international labor organizations, shall elect its officers not less often than once every five years by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot."  29 U.S.C. § 481(a).  Section 401(c) of the LMRDA also provides that "[a]dequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots."  *Id.* § 481(c).

The LMRDA provides that any union member may challenge an election believed to be held in violation of the statute's fair election procedures by filing a complaint with the Secretary of Labor after exhausting internal union remedies.  *See* 29 U.S.C. § 482(a).  The Secretary may file suit in federal district court to invalidate the election if she determines that probable cause exists to believe that that both (1) a violation of the Act has

occurred that has not been remedied; and (2) the violation may have affected the election's outcome. *Dunlap v. Bachowski*, 421 U.S. 560, 569-71 (1975); 29 U.S.C. § 482(b); 29 C.F.R. § 452.136.  The requirement that there be probable cause to believe that the violation may have affected the outcome serves to "free unions from the disruptive effect of a voided election unless there is a meaningful relation between a violation of the Act and results of a particular election." *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 507 (1968); *see* 29 C.F.R. § 452.5 ("[T]he Secretary as a matter of policy will not file suit to enforce the election provisions unless the violations found are such that the outcome may have been affected.").  If the Court finds that there was a violation of Section 401 of the LMRDA that "may have affected the outcome of an election, the court shall declare the election . . . to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization." 29 U.S.C. § 482(c).

The Secretary of Labor holds exclusive authority to bring suit to set aside union elections that violate Title IV. *See* 29 U.S.C. §§ 482, 483.  Title IV precludes private action by a union member to contest a completed election. *See Local No. 82, Furniture & Piano Moving, Furniture Drivers, Helpers,*

*Warehousemen & Packers v. Crowley*, 467 U.S. 526, 544, 549 (1984).  "The legislative history shows that Congress weighed how best to legislate against revealed abuses in union elections without departing needlessly from its long-standing policy against governmental intrusion into internal union affairs." *Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. at 470-71.

If the Secretary does not find probable cause to believe that there were any violations of the Act that may have affected the outcome of the election, the Secretary may not commence legal action.  29 U.S.C. § 482(b).  Under such circumstances, a union member is entitled to a statement of the Secretary's reasons for declining to sue.  If dissatisfied, the union member may obtain judicial review of the Statement of Reasons to determine whether the Secretary's decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.  *See Bachowski*, 421 U.S. at 566, 571-73; 29 C.F.R. § 458.64(b).  The Statement of Reasons is "to cover the relevant points and eschew irrelevancies."  *Id*. at 572.  The Statement of Reasons must permit the Court "to determine with some measure of confidence whether or not the discretion, which still remains with the Secretary, has been exercised in a manner that is neither arbitrary nor capricious." *Id*. at 571.  The Secretary is not required to provide detailed

reasons nor address every issue raised by Plaintiff in order for her decision to be upheld. *Id.* at 573.

Judicial review of the Statement of Reasons is exceedingly narrow. *Id.* at 591 (Burger, J., concurring); *see id.* at 571-73. "[S]ince the statute relies on the special knowledge and discretion of the Secretary for the determination of both the probable violation and the probable effect, clearly the reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit." *Id.* at 571. Review is to be confined to the four corners of the Statement of Reasons, *id.* at 572, and the Court may not consider "challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election." *Id.* at 573. The Court must defer to the Secretary's factual findings. *Id.*

Finally, the remedies available to Plaintiff in the district court are limited. Should the Court determine that the Secretary's Statement of Reasons fails to provide an adequate account of her decision, the Court may not order a new election. The Secretary retains the "exclusive authority to challenge and, if successful, to supervise union elections." *See Local No. 82 v. Crowley*, 467 U.S. 526, 548 n.22 (1984). If the Court determines that the Secretary's decision was arbitrary and capricious, the Secretary may be ordered to reopen consideration

of Plaintiff's former complaint and to supplement her Statement.
*See Bachowski*, 421 U.S. at 574—75.   When the district court
determines that the Secretary's statement of reasons adequately
demonstrates that the decision not to sue is not contrary to
law, the complaining union member's suit fails and should be
dismissed.   *Bachowski*, 421 U.S. at 574.

## III. DISCUSSION

### a. Claims Properly Before the Court

As an initial matter, it is important to distinguish
between the issues that were actually before the Secretary and
those that were not.   The Secretary may only consider issues
that are properly exhausted and raised in a complaint.   29
U.S.C. § 482(a)(1); *Hodgson v. Local Union 6799, United
Steelworkers of Am., AFL CIO*, 403 U.S. 333, 336 (1971).[6]

---

[6] None of the parties squarely address whether the claims brought
by Thomas Brennan were properly exhausted.   Intervenor BLET
suggests in a footnote that only the claims of plaintiff
Rightnowar are properly before the Court because Brennan did not
file any pre-election protests and did not sign Rightnowar's
protests.   BLET Opp. to Pls.' Mot. for Summ. J. at 3 n.2.   In
reply, the Secretary states in a footnote that it does not seek
dismissal of Brennan as a plaintiff "because Rightnowar is
properly before the Court and dismissal of Brennan would not
alter the claims necessary for the court to decide."   Def.'s
Reply at 2 n.1.   Because the Court finds that exhaustion is not
jurisdictional under the LMRDA, *see Solis v. Communications
Workers of America*, 766 F. Supp. 2d 84, 97 (D.D.C. 2011), and
because plaintiffs' claim will be dismissed for other reasons
discussed herein, the Court declines to reach the question of
whether Brennan exhausted his administrative remedies.

In the Agency Complaint, plaintiffs alleged several violations in connection with the December 15, 2010 election. Plaintiffs alleged that "National Division officers running for election used union funds to 'get out the vote' in the officer election." R. 51. Plaintiffs also alleged that union funds were used to create a so-called Mobilization Network during the election period, which had a bias toward the Unity Slate. R. 52. Plaintiffs also alleged that railroad carrier funds were also used in setting up the Mobilization Network. R. 52. Plaintiffs further alleged that the incumbent candidates increased their official travel during the time they were running for office and were essentially campaigning on union funds, which was a misuse of union funds in violation of 29 U.S.C. § 481(g). R. 53. Plaintiffs also contended that a defunct publication, the Locomotive Engineers and Trainmen Journal was revived during the time period of the election solely for the purpose of supporting the incumbent officers. R. 54. Finally, plaintiffs argued that "the very form of the ballot was an 'advertisement' on behalf of the candidacy of the Unity Slate" because the ballot listed the names of the members of the Unity Slate, of whom all but four had already been elected. R. 54. Plaintiffs alleged that the Agency Complaint was based on Rightnowar's pre-election protests numbered ND-2010-17 and ND-2010-18. R. 51.

20

In the Statement of Reasons, the Secretary addressed
several of these issues.  The Secretary first addressed
plaintiffs' allegations regarding improper use of union funds in
connection with the Mobilization Network, the GOTV Drive, and
travel for campaigning.  SOR at 1.  The Secretary then addressed
plaintiffs' allegations regarding the appearance of the ballots.
*Id.* at 2.  Finally, the Secretary addressed an allegation
regarding whether Secretary-Treasurer Walpert was serving as an
Election Officer, which had been raised in the union protest
process, even though this allegation was not specifically
addressed in plaintiffs' Agency Complaint.  *Id.*  The Secretary
declined to address the remaining issues raised by plaintiffs,
finding that they were not properly exhausted under the union's
internal protest procedure.  These allegations included that
railroad carrier funds were used in setting up the Mobilization
Network and that a journal was revived for the purpose of
supporting incumbent candidates.  *Id.*  In the Complaint and in
the parties' subsequent briefing, plaintiffs do not challenge
the Secretary's decision in the Statement of Reasons that these
remaining issues were not exhausted.

Accordingly, the issues that were properly raised before
the Secretary by plaintiffs are: (1) the improper use of union
funds in connection with the December 15, 2010 election,
specifically in the GOTV Drive, the Mobilization Network, and

21

travel for campaigning; (2) the appearance of the ballots; and
(3) whether Secretary-Treasurer Walpert was improperly serving
as Election Officer.

### b. Plaintiffs' Allegations Regarding What the Secretary Failed to Decide

In opposition to the Secretary's motion and in support of
plaintiffs' cross-motion for summary judgment, plaintiffs argue
that the Secretary's decision was arbitrary and capricious
because it failed to address the issue of whether adequate
safeguards were in place to ensure that union funds were not
misused in violation of Section 401(c).  Pls.' Cross-Mot. for
Summ. J. at 5.  Plaintiffs contend that in a December 17, 2010
post-election protest, they challenged the lack of adequate
safeguards.  Pls.' Cross-Mot. for Summ. J. at 5.  Plaintiffs
also contend that the Agency Complaint put the Secretary on
notice of their allegation that adequate safeguards were not in
place by alleging that plaintiffs were unable to track and
monitor the GOTV Drive.  *Id.* at 6.

There are several problems with plaintiffs' argument.
First, plaintiffs did not make an "adequate safeguards" argument
in the Agency Complaint.  As the Secretary explains, plaintiffs
only raised allegations regarding misuse of union funds, not
that there were inadequate safeguards to prevent misuse of union
funds, and thus the Secretary's failure to address adequate

safeguards is not arbitrary or capricious.  Plaintiffs'
allegations, at most, put the Secretary on notice that
*plaintiffs* were unable to determine how the union funds were
being used.  Plaintiffs did not allege that the *union* failed to
have adequate safeguards in place to track the use of union
funds.  This is not a case where the Secretary overlooked entire
arguments.  *See*, *e.g.*, *Frizelle v. Slater*, 111 F.3d 172, 177
(D.C. Cir. 1997).  The Secretary is not obligated to investigate
what is, at most, a tangential inference arising from
plaintiffs' actual allegations.  Plaintiffs argue that *Hodgson
v. Local Union 6799* requires the Court to liberally construe
plaintiffs' allegations because "union members may use broad and
imprecise language in framing their internal union protests."
403 U.S. 333, 340 (1971).  *Hodgson* concluded, however, that
union members are required to meet the exhaustion requirement by
indicating "in some discernible fashion" the alleged election
violation.  *Id*. at 341.  Here, the issue is not whether
plaintiffs were unable to articulate theories of election
violations; indeed, plaintiffs' allegations have been
articulately and precisely made.  Rather, plaintiffs did not
include among their various allegations of wrongdoing any
allegation that BLET failed to provide adequate safeguards to
insure a fair election in violation of Section 401(c).

In addition, even if plaintiffs had included their "adequate safeguards" argument in their Agency Complaint, they failed to exhaust their remedies in the union protest proceedings.  *See* 29 U.S.C. § 482.  Plaintiffs allege that they raised the "adequate safeguards" argument in a December 17, 2010 post-election protest.  *See* R. 467.  Assuming that is true, the December 17 protest was not incorporated into the Agency Complaint, which specifically stated that it was based on the November 8, 15 and 16 pre-election protests, for which plaintiffs received a final decision on December 21, 2010.  In addition, at the time Rightnowar filed his Agency Complaint, Rightnowar had not yet received a final decision on his December 21, 2010 post-election protest.  The final decision on appeal was not issued until January 21, 2011, nine days after the filing of the Agency Complaint.  R. 486.[7]  Accordingly, the "adequate safeguards" issue was not properly exhausted and the Secretary's failure to address it is neither arbitrary nor capricious.  *See* 29 U.S.C. § 482.

In their opposition to defendants' motion and in their cross-motion for summary judgment, plaintiffs do not appear to raise any other arguments regarding allegations the Secretary

---

[7] The January 21, 2011 Decision on Appeal does not appear to discuss an "adequate safeguards" violation.

failed to address in the Statement of Reasons.  Accordingly,
plaintiffs' arguments on those points are deemed conceded.

### c. Plaintiffs Allege that the Secretary's Finding of "No Evidence" was Arbitrary and Capricious

Plaintiffs next turn to the Secretary's decision that the
investigation did not substantiate plaintiffs' allegations that
union funds were used improperly.  Section 401(g) of the Act
prohibits the use of employer or union funds to promote a
candidate for union office as follows:

> No moneys received by any labor organization . . .
> shall be contributed to promote the candidacy of any
> person in any election subject to the provisions of
> this subchapter.  Such moneys of a labor organization
> may be utilized for notices, factual statements of
> issues not involving candidates, and other expenses
> necessary for the holding of an election.

29 U.S.C. § 481(g).  The Act prohibits promotion of candidates,
as emphasized by the related regulation, which states that "the
Act does not prohibit impartial publication of election
information." *Id*.

In the Statement of Reasons, the Secretary concluded that
the use of union funds in the December 15, 2010 election did not
violate the Act.  The Secretary further explained that the
Mobilization Network was permitted under Section 7(h) of the
BLET By-laws.  SOR at 1.  The Secretary found that union members
had received "consistently clear communications" regarding the
purpose of the Mobilization Network and about efforts to

increase voter turnout.  The Secretary noted that even

Rightnowar was asked to participate in the GOTV Drive.  The

Secretary concluded that

> [t]he investigation found no evidence that the
> Mobilization Network was used to promote the candidacy
> of the incumbent slate, or that the Mobilization
> Network directed its efforts toward supports of the
> incumbent slate.  The investigation also found no
> evidence that anyone working for the Mobilization
> Network campaigned for the incumbent slate while being
> paid by the union or at times when activities were to
> be devoted to Mobilization Network activities.  There
> was no violation of the Act.

SOR at 2.  Plaintiffs first argue a number of theories regarding

the motivation of various union members and also argue that the

"lack of adequate safeguards" caused there to be no evidence.

In addition, plaintiffs cite a piece of evidence—a website—that

they contend establishes "the Unity Slate's use of the GOTV for

campaign purposes."  Pls.' Mot. for Summ. J. at 9 (citing Compl.

Ex. A).  Specifically, the Unity Slate's website stated:

> Volunteer to participate in the BLET Unity Slate get
> out the vote campaign in the historical one man one
> vote election following our National Convention in
> October.  It is imperative that all members exercise
> our right to vote in this election and we need your
> help to encourage everyone to vote.

Compl. Ex. A.  Plaintiffs acknowledge that this evidence was

before the Secretary.[8]  Plaintiffs also admit that the Secretary

---

[8] Plaintiffs acknowledge that the Secretary requested evidence
regarding whether the union officers who worked on the "Get Out
The Vote Drive" picked their own supporters to call or engage in
the drive to help the Unity Slate.  Compl.  ¶ 29.  Plaintiffs
also acknowledge that plaintiff's counsel spoke with

is not required to address in the Statement of Reasons every piece of evidence submitted.  Plaintiffs argue, however, that the Secretary's statement that there was "no evidence" of misuse of union funds suggests that the Secretary did not consider the website evidence at all, rendering the Statement of Reasons arbitrary and capricious.

The Secretary argues that the statement on the Unity Slate's website is not evidence that the GOTV Drive was used to promote particular candidates on the incumbent slate.  In this respect, the Secretary contends that plaintiffs misunderstand the applicable statutory standard.  Specifically, the Secretary argues that Section 401(g) prohibits the "promotion" of a particular candidate, and it was under the standard that plaintiffs' allegations were evaluated.  The Secretary contends that plaintiffs' arguments focus instead on an alleged subjective purpose of the GOTV Drive to support the incumbent slate.

The Court agrees with the Secretary.  As an initial matter, and as plaintiffs concede, the Secretary is not required to address in the Statement of Reasons every piece of evidence

representatives of the Department of Labor during the Department's investigation of plaintiffs' allegations and provided the Department with evidence that purported to support plaintiffs' allegations; in particular, the contents of the website.  Compl. ¶ 30.

before her.  *Bachowski*, 421 U.S. at 573.   In addition, the Court

finds that the statement on the website is does not, by itself,

establish probable cause that union funds were misused, and that

the misuse of union funds affected the outcome of the election.

*See* 29 U.S.C. § 482(b).   At most, it evidences the unknown

writer's belief that the Unity Slate had organized the GOTV

Drive.   The Court notes that the statement is otherwise neutral

on its face, encouraging everyone to vote.   And, as the

Secretary noted, plaintiff Rightnowar was asked to be a part of

the Mobilization Network.   SOR at 2.   In view of all of these

factors, the Secretary's finding that there was "no evidence" of

the misuse of union funds is not arbitrary or capricious.[9]

---

[9] The case submitted by plaintiffs with a notice of supplemental
authority also does not provide support for plaintiffs'
arguments.  *See Corner v. Solis*, No. 11-8652, 2012 U.S. Dist.
LEXIS 75742 (N.D. Ill. Jun. 1, 2012).   In *Corner*, the district
court remanded a narrow issue to the Secretary for a
supplemental statement of reasons.   Specifically, the court
found that the Secretary's decision not to challenge the
election eligibility of a union member was not sufficiently
explained in the Statement of Reasons.   The Secretary had
appeared to conclude that probable cause existed to believe that
a violation had occurred, but the Secretary then cited to an
inapplicable statutory provision in stating that suit would not
be brought.   *Corner* thus stands for the unremarkable proposition
that a court may remand an issue to the Secretary in the
appropriate case where the Secretary's reasoning is unclear or
contradictory.   This is not such a case.   Because plaintiffs
failed to raise the "adequate safeguards" issue properly, the
Secretary's failure to address it does not require remand.

The Court has considered plaintiffs' other arguments and finds that they lack merit.[10]  When the district court determines that the Secretary's statement of reasons adequately demonstrates that the decision not to sue is not contrary to law, the complaining union member's suit fails and should be dismissed.  *Bachowski*, 421 U.S. at 574.

## IV.  CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss or, in the alternative, for summary judgment is **GRANTED**. Plaintiff's cross-motion for summary judgment is **DENIED** as moot. An appropriate Order accompanies this Memorandum Opinion.


Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **March 31, 2013**

---

[10] Plaintiffs' final argument is that the Secretary's decision not to bring suit was arbitrary and capricious because it is allegedly inconsistent with the Secretary's own regulations. Here, plaintiffs are essentially repeating their allegation that union funds were used in violation of Section 401(g), which prohibits the use of union funds to "promote" certain candidates.  Plaintiffs' argument assumes that union funds *were* used to promote certain candidates despite the Secretary's conclusion that no violation of the Act occurred.  For the reasons stated above, the Court finds that the Secretary's decision was not arbitrary and capricious.